UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Andrew Hendricks,

        Plaintiff,

           v.

Shelley M. Mallozzi, Director of the Inmate
Grievance Program for DOCCS; Earl Bell,
Superintendent of Clinton Corr. Fac.; D.
Holdridge, Deputy Superintendent for Security
at Clinton Corr. Fac.; C. DeLutis, Captain of
Security at Clinton Corr. Fac. and; K. Hicks,
Program Committee Chairperson at Clinton Corr.
Fac., all in thier individual capacities,

        Defendants.

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Action No.: 9:20-cv-01035 (MAD/ML)

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
NOV 1 8 2020
AT_____ O'CLOCK
John M. Domurad, Clerk - Syracuse

## I. Complaint

Plaintiff, Andrew Hendricks, Pro Se, for his Amended Complaint states as follows:

## II. Parties, Jurisdiction and Venue

1. Plaintiff, Andrew Hendricks, is a convicted and sentenced state prisoner incarcerated at Clinton Corr. Fac./Annex, P.O. Box 2002, Dannemora, N.Y. 12929, a New York State correctional facility.

2. Plaintiff, Andrew Hendricks is, and was at all times mentioned herein, an adult citizen of the United States and resident of the State of New York.

3. Defendant, Shelley M. Mallozzi, was at all relevant times mentioned herein, Dir. of the Inmate Grievance Program for the Department of Corrections and Community Supervision (herein after DOCCS).

4. Defendant, Earl Bell, was at all relevant times mentioned herein, Superintendent of Clinton Corr. Fac.

5. Defendant, D. Holdridge, was at all relevant times mentioned herein, Deputy

Superintendent for Security at Clinton Corr. Fac./Annex.

6. Defendant, C. DeLutis, was at all relevant times mentioned herein, Captain of Security at Clinton Corr. Fac./Annex.

7. Defendant, K. Hicks, was at all relevant times mentioned herein, the Program Committee Chairperson at Clinton Corr. Fac./Annex.

8. This claim arises under and is brought pursuant to 42 U.S.C., § 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the First and Four-teenth Amendment of the United States Constitution. This Court has jurisdiction over this matter pursuant to 28 U.S.C., § 1331 and 1343.

9. This cause of action arose in the Northern District of New York. Therefore, venue is proper under 28 U.S.C., § 1391 (b).

III. Statement of Facts

10. On 10/11/17, while at my prison job, The Tailor Shop, I was given an "Inmate Counseling Notification" by the civilian Tailor Shop employee, Ms. Grenier. She claimed that I had harassed her by giving her a "flat-tire" after she told me to get back to work after a break.

11. On 10/12/17, I was harassed, threatened and intimidated by a correctional officer, C.O. Ayotte, about the alleged  flat-tire incident from the day before, so on 10/13/17 I wrote an inmate grievance complaint about C.O. Ayotte harassing me while also expressing my fear of reprisal/retaliation, and submitted it to the Inmate Greivance Resolution Committee (herein after IGRC) that very same day. In said grievance complaint I requested that C.O. Ayotte be reprimanded and assigned to a different post.

12. On 11/1/17, I was called to the Program Committee where prison jobs are assigned and apparently unassigned because upon arrival I was told that I was being re-moved from the Tailor Shop for "security reasons". I asked what these so-called "security reasons" were and I was told it was "confidential information". Present at the Program Committee that day was Ms. Hicks, the Program Committee Chairperson, Sgt. Bezio and

an Education or Vocational Supervisor.

13. On 11/6/17, I wrote and submitted a letter to the Program Committee Chairperson requesting information about the reason why, who requested and who approved the request that I be removed from the Tailor Shop? On 11/22/17 I received a letter from the Program Committee Chairperson, Ms. Hicks, in which she essentially denied my request for information, iterating that I was removed from the Tailor Shop for "security reasons", and the request to remove me from the Tailor Shop was made by "security" with "no further explanation".

14. On 11/27/17, I wrote and sent a letter to the Deputy Superintendent for Security, first expressing that I was abruptly fired from the Tailor Shop, and, more or less, requested the very same information about my removal, from him, that I had previously attempted to get from the Program Committee Chairperson. In a letter also dated 11/27/17, the Deputy Superintendent for Security, D. Holdridge, got right back to me stating that on 10/26/17 Cpt. DeLutis directed my removal from the Tailor Shop for security reasons and that he, himself, also supported my removal.

IV. Exhaustion of Administrative Remedies

15. On 10/13/17 I wrote and submitted an inamte grievance complaint to the IGRC stating that I was harassed, threatened and intimidated by C.O. Ayotte for an alleged "flat-tire" that I supposedly gave to the civilian Tailor Shop employee after she told me to get back to work after a break. In said grievance complaint I requested that C.O. Ayotte be reprimanded and assigned to a different post. In a decision dated: 11/27/17 Superintendent Michael Kirkpatrick denied my harassment grievance, after I appealed to him the IGRC's decision also denying my grievance. And in a decision dated: 2/27/19, the Central Office Review Committee (herein after CORC) upheld Superintendent Kirkpatrick's denial of my harassment grievance appeal.

16. On 11/21/17 I wrote and submitted an inmate grievance complaint to the IGRC stating that I was fired from the Tailor Shop in retaliation for filing a grievance

against a correctional officer. In said complaint I requested, among other things, to
be placed back in the Tailor Shop and given back-pay dating from the date I was fired
on 11/1/17. After my grievance was denied by the IGRC on Dec.21, 2017, I immediately
appealed it to Superintendent Bell who, in a decision dated: 1/19/18, also denied my
grievance. I then immediately appealed Superintendent Bell's decision to the CORC who,
in a decision dated: 5/8/19, upheld Superintendent Bell's determination.

17. On 11/27/17, I wrote and submitted an inmate grievance complaint to the IGRC
against the Program Committee Chairperson, Ms. Hicks, in an attempt to compel her to
send me the information I had previously requested from her regarding my removal from
the Tailor Shop. To this very day this grievance has not been responded to, but in full
disclosure, I also did not appeal it either.

V. Previous Lawsuits by Plaintiff

18. In August 2018, after the CORC still had not yet rendered a decision on my
grievance appeal, I filed a Claim with the New York State Court of Claims. In said Claim
I sued the State of New York for violating my New York Constitutional right to Freedom
of Speech, (N.Y.S. Const., Art. 1, § 8). and New York's Codes, Rules and Regulations
(herein after 7 NYCRR). part 701.6 (b) when the states' officer(s) fired me from my
prison job in retaliation for filing a grievance against a correctional officer. In a
Decision and Order dated: 1/23/19, the New York State Court of Claims dismissed my
Claim for lack of subject matter jurisdiction. I did not appeal.

19. In April 2018, after the CORC still had not yet rendered a decision on my
grievance appeal, I filed an Article 78 Petition in the Clinton County/Supreme Court.
In said Petition, in which Commissioner Anthony Annucci and Superintendent Earl Bell
were the only respondents, I accussed them of violating the New York Constitution, Art.
1, §§ 1,8 and 11, and various other New York State laws, rules and regulations, when
their officers fired me from the Tailor Shop in retaliation for filing a grievance
against a correctional officer and for denying/dismissing my retaliation grievance

complaint.

20. Almost one year later I filed an Amended  Petition dated: 2/11/19, in the Clinton County/Supreme Court, while the respondents' motion to dismiss was still pending in court. In my Amended Petition I further accussed the respondents' of violating my New York Constitutional right to equal protection of the laws and (substantive) due process of law, along with the same accussations from my original petition.

21. In a Decision, Order and Judgement of Clinton Coutny Court dated: 3/11/19, the respondents' motion to dismiss granted and my original petition was dismissed. And in a separate  order of the court dated: 3/12/19, my Amended Petition was rejected for failure to seek leave for the filing of a late amendment.

22. I filed a timely Notice of Appeal in the Appellate Division: Third Dept., and as of 5/22/19 my actual appeal was deemed filed with said court.

23. In a Memorandum and Order, Decided and Entered: 1/9/20, the Appellate Div.: Third Dept. affirmed the lower courts' decision to dismiss my Article 78 Petition, re-ject my Amended Petition and found my remaining contentions unavailing.

VI. Statement of Claim(s)

24. At all times mentioned herein, defendants were "persons" for purposes of 42 U.S.C., § 1983 and acted under color of state law to punish plaintiff for exercising his constitutional rights.

VII. Claim(s) against C. DeLutis, Captain of Security at Clinton Corr. Fac./Annex

25. Defendant, Mr. C. DeLutis, violated both my First Amendment right to petition the government for redress of grievances and to be free from retaliation when filing a grievance, and my Fourteenth Amendment right to (substantive) Due Process of Law when, in retaliation for filing a grievance against a correctional officer, he had me removed from my prison job.

26. on 10/20/17 I filed a harassment grievance against C.O. Ayotte, with the IGRC.

Cpt. DeLutis was in charge of the investigation. He directed Sgt. Stuart to interview me and C.O. Ayotte about the incident, which he did, separately, on 10/27/17.

27. The day before though, on 10/26/17, Cpt. DeLutis sent an e-mail to Ms. Hicks, the Program Committee Chairperson, telling her to remove me from the Tailor Shop for "security reasons".

28. In a letter dated: 10/29/17, Sgt. Stuart relayed his interpretation of our interview, regarding my employee harassment complaint, to Cpt. DeLutis.

29. On 11/1/17 Ms. Hicks removed me from the Tailor Shop for "security reasons", obviously honoring Cpt. DeLutis' previous demand that she do so.

30. On 12/11/17, I filed a greivance (dated: 11/21/17) with the IGRC stating that I was fired from the Tailor Shop in retaliation for filing a grievance against a correctional officer, in violation of my State and Federal Constitutional rights.

31. The filing of a prison grievance is protected activity. Therefore the first prong of my retaliation claim is satisfied.

32. The adverse action that Cpt. DeLutis took against me was, him telling Ms. Hicks to remove me from the Tailor Shop in retaliation for filing a grievance against C.O. Ayotte. It goes without saying that a person simularly situated would not file a grievance against an officer if he/she knew that he/she would get fired from their prison job. Especially the highest paying job in the prison.

33. As for the causal connection, again, my harassment grievance was filed on 10/20/17 and Cpt. DeLutis, who was well aware that I had filed the harassment grievance against C.O. Ayotte, told Ms. Hicks to remove me from the Tailor Shop on 10/26/17, prior to even beginning his investigation into my harassment grievance against C.O. Ayotte. This only six days between my constitutionally protected activity and Cpt. DeLutis' adverse action taken against me satisfies temporal proximity. Cpt. DeLutis' desire to remove me from the Tailor Shop was not only baseless and unwarranted, but was also premature.

34. Cpt. DeLutis told Ms. Hicks that he wanted me removed from the Tailor Shop

Cpt. DeLutis was in charge of the investigation. He directed Sgt. Stuart to interview both me and C.O. Ayotte about the incident, which he did, separately, on 10/27/17.

27. The day before, on 10/26/17, Cpt. DeLutis sent an e-mail to Ms. Hicks, the Program Committee Chairperson, telling her to remove me from the Tailor Shop for "security reasons".

28. In a letter dated: 10/29/17, Sgt. Stuart relayed his interpretation of our interviews regarding my harassment greivance, to Cpt. DeLutis.

29. On 11/1/17, Ms. Hicks removed me from the Tailor Shop, honoring Cpt. DeLutis' previous demand to do so.

30. On 12/11/17, I filed a grievance (dated: 11/21/17) with the IGRC stating that I was fired from the Tailor Shop in retaliation for filing a grievance against a correctional officer, in violation of both my State and Federal Constitutional rights.

31. The filing of a grievance is protected activity. Therefore, the first prong of my retaliation claim is satisfied.

32. The adverse action that Cpt. DeLutis took against me was having me removed from the Tailor Shop in retaliation for filing a grievance against an officer. Cpt. DeLutis obviously knew about the grievance I filed against C.O. Ayotte because he was in charge of the investigation. And it goes without saying that a person simularly situated would not have filed a grievance against an officer had he/she knew he/she would be fired from his/her job, the highest paying job in the prison.

33. As for the causal connection, again, my harassment grievance was filed on 10/20/17, and Cpt. DeLutis told Ms. Hicks to remove me from the Tailor Shop on 10/26/17. This only six days between my constitutionally protected activity and Cpt. DeLutis' adverse action against me satisfies temporal proximity.

34. Also, the fact that Cpt. DeLutis told Ms. Hicks to remove me from the Tailor Shop, prior to beginning his investigation into my harassment grievance, and before he had any information as to whether or not there was even an actual security situation. makes it is highly implausable that any actual legitiamte reasons existed that

would warrant me being removed from the Tailor Shop at the time when he demanded my removal. Furthermore, the fact that DOCCS policies and procedures regarding requests for removing inmates from program, was completely passed over and disregarded, is further proof that Cpt. DeLutis' desire to remove me from the Tailor Shop was motivated by retaliatory intent.

35. My harassment grievance was ultimately dismissed by Superintendent Earl Bell as being "unsubstantiated" and "there is no evidence of staff malfeasance". But, as of the filing of this complaint, I have never been allowed to go back to work in the Tailor Shop.

36.  Plainly put, Cpt. DeLutis told the Program Committee Chairperson to remove me from the Tailor Shop in retaliation for filing a grievance against an officer, in violation of my First and Fourteenth Amendment rights. And the fact that I filed a grievance against an officer is the sole motivating factor in his decision to remove me from the Tailor Shop.

VIII. Claim(s) against K. Hicks, Program Committee Chairperson at Clinton Corr. Fac./Annex

37. Defendant, K. Hicks, violated both my First Amendment right to petition the government for redress of grievances and to be free from retaliation when filing a grievance, and my Fourteenth Amendment right to (substantive) Due Process of Law when, being a supervisory official who was personally involved, she showed gross negligence and demonstrated deliberate indifference to my constitutional rights when she removed me from my prison job in retaliation for filing a grievance against a correctional officer and failed to remedy the wrong.

38. On 10/26/17 K. Hicks, the Program Committee Chairperson, received an e-mail from Cpt. DeLutis telling her to remove me from the Tailor Shop for "security reasons", and on 11/1/17 Ms. Hicks called me to the Program Committee and removed me from the Tailor Shop.

39. In a letter dated: 11/6/17, I wrote to the Program Committee Chairperson

requesting more information about me being removed from the Tailor Shop. In a letter
dated: 11/20/17, Ms. Hicks wrote back to me stating that a request for my removal was
made by security (staff) "with no further explanation" and the documents and other in-
formation I requested does not exist. In other words, Ms. Hicks removed me from the
Tailor Shop merely because Cpt. DeLutis demanded that she do so, for so-called "security
reasons" but, "with no further explanation" as to what those so-called "security reasons"
were.

40. New York State DOCCS has a clear policy and procedure that must be followed
by the Program Committee Chairperson when staff requests that an inmate be removed from
his/her program which includes, but is not limited to, investigating the validity, leg-
itimacy and necessity of the request for removal.

41. Ms. Hicks is a supervisory individual, and she became personally involved
when Cpt. DeLutis told her to remove me from the Tailor Shop and then she did it. At
that point, Ms. Hicks had an opportunity to remedy the wrong by following DOCCS regula-
tion and inquiring into the so-called security reasons, but chose not to. Therefore, by
chosing not to investigate further into Cpt. DeLutis' demand, she showed gross negligence
and demonstrated deliberate indifference to my constitutional rights and therefore cannot
escape liability.

IX. Claim(s) against D. Holdridge, Deputy Superintendent for Security at Clinton Corr. Fac.

42. Defendant, D. Holdridge, violated both my First Amendment right to petition
the government for redress of grievances and to be free from retaliation when filing a
grievance, and my Fourteenth Amendment right to (substantive) Due Process of Law when,
after I was removed from my prison job, in retaliation for filing a grievance against a
correctional officer, being a supervisory individual, hearing of the violation and be-
coming personally involved, he showed gross negligence and demonstrated deliberate in-
difference to my constitutional rights for failing to remedy the wrong.

43. On 11/27/17, I sent a letter to the Deputy Superintendent for Security request-

information about me being removed from the Tailor Shop, what was the reason for the request and who authorized/approved the request. In a letter dated: 11/27/17 Mr. Holdridge got right back to me stating that he had reviewed the "confidential documentation supporting my removal" and that he, himself, also supports the removal as my removal is in the best interest of the facility.

44. This so-called "confidential documentation supporting my removal" that Mr. Holdridge claims to have reviewed does not exist. As stated earlier, Cpt. DeLutis did not follow any DOCCS policies or procedures in this situation, including the fact that he did not fill-out nor file any paperwork. I know this because I F.O.I.L. requested any and all documents, records and information regaring this issue and the only thing I received was a print-copy of Cpt. DeLutis' e-mail to Ms. Hicks.

45. For Mr. Holdridge to say that he reviewed such documentation is a deliberate and deceptive untruth. Mr. Holdridge did more than merely "rubber stamp" his approval of my removal from the Tailor Shop. He is a supervisory individual and he personally involved himself in the process when he lied to me about having reviewed documents that he knew full well did not even exist. He had an opportunity to remedy the wrong but chose not to, showing gross negligence and demonstrating deliberate indifference to my constitutional rights. For these reasons Mr. Holdridge cannot escape liability.

X. Claim(s) against Earl Bell, Superintendent of Clinton Correctional Facility

46. Defendant, Earl Bell, violated both my First Amendment right to petition the government for redress of grievances and to be free from retaliation when filing a grievance, and my Fourteenth Amendment right to (substantive) Due Process of Law when, after I was removed from the Tailor Shop in retaliation for filing a grievance against a correctional officer he, being a supervisory individual hearing of the violation and becoming personally involved, showed gross negligence and demonstrated deliberate indifference to my constitutional rights for failing to remedy the wrong.

47. In an inmate grievance complaint dated: 11/21/17, filed: 12/11/17, I stated

and went on to explain in detail that I was fired from the Tailor Shop in retaliation
for filing a grievance against an officer in violation of, among other things, my
United States Constitutional rights. The IGRC response to my grievance complaint stated
that I was removed from the Tailor Shop for legitmate security concerns and I am not
allowed to know what those security reasons are as it might jeopadize the safety and
security of the facility. I disagreed with the IGRC's response and appealed their decision
to the Superintendent, Earl Bell, on 12/27/17.

48. Superintendent Bell denied my grievance appeal, also stating that I was re-
moved from the Tailor Shop for legitimate security concerns. In his decision Superinten-
dent Bell cited the Policy, Procedure and Standards for Programing Inmates manual which,
according to him, states, "A change of assignment can be made at any time, in writing
or in person, when deemed appropriate by the Deputy Superintendent for Programs."
Superintendent Bell goes on to say that the allegations in my grievance complaint are
"unsubstantiated", "there is no evidence of staff malfeasence" and I am not "due any
back-pay". I disagreed with the Superintendent's denial of my grievance appeal and
immediately appealed his decision to the CORC.

49. Superintendent Bell deliberately misquoted the Policy, Procedures and Stand-
ards for Programming Inmates manual in an attempt to be deceptive, by stating that is
says, "A change in program can be made at anytime, 'in person or in writing....'" when
it clearly does not say "in person or in writing" in that particular section which is
section three of page five. Section five of page five does state, "....the inmate will
be informed by the Program Committee Chairperson, 'in person or in writing', of the
reason for the changes." This little mix or combination of the these two sections of
the Policy manual by the Superintendent is nothing less than a shameless and unattrac-
tive attempt to be deceptive and misleading.

50. The Policy manual cited by Superintendent Bell in his decision denying my
grievance appeal, futher states policies and procedures for removing an inmate from
his/her program that deliberately were not followed by, more or less, all parties in-

11

volved, further proving that I was removed from the Tailor Shop for nefarious reasons. Sup⁺ ⁻ntendent Bell never investigated the actual reason (the so-called "security reasons) for the request that I be removed from the Tailor Shop. He simpl⁺ pieced toegther a couple of sections of the Policy manual that sounded good to him and denied my grievance appeal.

51. Plainly put, Superintendent Bell, being a supervisory individual who learned of the violation though a grievance appeal and was personally involved, did not conduct an actual investigation into the legitimacy and/or neseccity of the request that I be removed from the Tailor Shop, thereby showing gross negligence and demonstrating deliberate indifference to my constitutional rights for failing to remedy the wrong, and therefore cannot escape liability.

## XI. Claim(s) against Shelley M. Mallozzi, Dir, of the Inmate Grievance Program for DOCCS

52. Defendant, Shelley M. Mallozzi, violated both my First Amendment right to petition the government for redress of greivances and to be free from retaliation when filing a grievance, and my Fourteenth Amendment right to (substantive) Due Process of Law when, after I was removed from the my prison job in retaliation for filing a grievance against a correctional officer, being a supervisory individual who laerned of the violation though an appeal and was personally involved, showed gross negligence and demonstrated deliberate indifference to my constitutional rights for failing to remedy the wrong and thereby cannot escape liabilty.

53. In the CORC decision denying my grievance appeal Ms. Mallozzi stated, among other things, that, "the CORC upholds the determination of the Superintendent", and I was removed from my position in the Tailor Shop for "security reasons".

54. I have already shown in section X. of this complaint, that Superintendent Bell did not investigate ⸱⸱⁄ niether my grievance appeal nor the validity, legitimacy and necessity of the actual reasons(s) for my removal. Superintendent Bell's reasoning and explanation for denying my appeal was deceptive and intentionally misleading. Since

Ms. Mallozzi wants to uphold Superintendent Bell's determination she is equally as liable for violating my constitutional rights, because all this shows is that she also did not do any actual investigation into my grievance appeal.

55. In Ms. Mallozzi's decision denying my appeal she stated that I was removed from the Tailor Shop for security reasons. While the term "security reasons" does exist in the e-mail sent from Cpt. DeLutis to Ms. Hicks, actual security reasons do not. The term "security reasons", in and of itself, is a wholly insufficient reason to remove me from my program.

56. Ms Mallozzi did not investigate my grievance appeal because if she did she would have saw that, not only were no DOCCS policies & procedures followed regarding the request (demand) that I be removed from the Tailor Shop but also no actual security reasons existed at the time when I was removed from the Tailor Shop, that would warrant my removal.

57. Ms. Mallozzi  is a supervisory individual who learned of the violation through an appeal and was personally involved. Her choice not to actually investigate my grievance appeal and simlpy deny it shows gross negligence and demonstrates deliberate indifference to my constitutional rights. Ms. Mallozzi had an opportunity to remedy the wrong, but chose not to and therefore cannot escape liabilty.

WHEREFORE, Plaintiff prays for judgement in his favor and damages in his favor against all defendants in an amount sufficient to compensate for the pain and mental anguish suffered by him for the deliberate indifference and intentional misconduct of the defendants, but in no envent less than $50,000.00 in compensatory damages ($10,000.00 per defendant) and $125,000.00 in punative damages ($25,000.00 per defendant) for a total of $175,000.00 in damages, together with attorney's fees and costs, and such additional relief as this Court may deem just and proper.

I DECLARE UNDER PENALTY OF PURJURY THAT THE FORGOING IS TRUE AND CORRECT.

Executed on: November 15, 2020

Andrew Hendricks, Plaintiff-Pro Se