UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW HENDRICKS,

                       Plaintiff,

v.

SHELLEY M. MALLOZZI, Director of the Inmate       9:20-CV-1035
Grievance Program for DOCCS; EARL BELL,            (MAD/ML)
Superintendent, Clinton Correctional Facility;
D. HOLDRIDGE, Deputy Superintendent for
Security, Clinton Correctional Facility; and
C. DELUTIS, Captain of Security, Clinton
Correctional Facility,

                       Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

Andrew Hendricks
  *Pro Se* Plaintiff
Eastern New York Correctional Facility
Box 338
Napanoch, New York 12458

LETITIA A. JAMES                               BRENDA BADDAM, ESQ.
Attorney General for the State of New York        Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

      Currently before the Court, in this civil rights action filed by Andrew Hendricks

("Plaintiff") against Shelley Mallozzi, Earl Bell, D. Holdridge, and C. DeLutis (collectively

"Defendants"), is Defendants' motion to dismiss for failure to state a claim upon which relief

may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 17.) For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

I.  **RELEVANT BACKGROUND**

    A.  **Procedural History**

On September 3, 2020, Plaintiff commenced this action by the filing of a Complaint, accompanied by a motion for leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 2.) On October 29, 2020, United States District Judge Mae A. D'Agostino granted Plaintiff's IFP application and dismissed the Complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). (Dkt. No. 5.)

On November 18, 2020, Plaintiff filed an Amended Complaint. (Dkt. No. 8.) On December 23, 2020, Judge D'Agostino reviewed Plaintiff's Amended Complaint and set forth the factual allegations therein. (Dkt. No. 9 at 2-4.) Judge D'Agostino ordered that (1) Plaintiff's Amended Complaint was accepted for filing with respect to a claim for retaliation pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants, and (2) any other causes of action in the Amended Complaint were dismissed. (*See generally* Dkt. No. 9.)

On March 1, 2021, in lieu of an answer, Defendants filed the pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 17.)

    B.  **Parties' Briefing on Defendants' Motion to Dismiss**

        1.  **Defendants' Memorandum of Law**

Generally, in support of their motion to dismiss, Defendants assert the following two arguments: (1) Plaintiff's retaliation claim fails as a matter of law, and (2) Plaintiff failed to allege the personal involvement of Defendants Holdridge, Bell, and Mallozzi. (Dkt. No. 17, Attach. 1 at 6-16.)

More specifically, Defendants first argue that Plaintiff's retaliation claim fails as a matter of law because the Amended Complaint fails to allege facts plausibly suggesting that Defendants took an adverse action against Plaintiff or that a causal connection existed between his protected speech and the alleged adverse action. (*Id*. at 8-15.) Defendants argue that Plaintiff's claim against Defendant DeLutis—which is premised on grievance that Plaintiff filed against Correction Officer Ayotte (an unnamed party to this action)—fails because (a) Plaintiff's conclusory allegation (that Defendant DeLutis was "sympathetic" towards C.O. Ayotte for an unknown reason) is insufficient to overcome the heightened burden of establishing a causal connection of retaliation by one officer (Defendant DeLutis) on behalf of another officer (C.O. Ayotte), (b) inmates do not have any constitutional right to a particular prison job, (c) temporal proximity alone is insufficient to establish an inference of retaliation, and (d) Defendant DeLutis's actions were taken for legitimate, non-retaliatory reasons unrelated to Plaintiff's protected activity—namely, a security concern. (*Id*. at 8-11.) Defendants argue that Plaintiff's claim against Defendant Holdridge—which is premised on his alleged approval of Defendant DeLutis's decision to remove Plaintiff from his job, a lie that he reviewed confidential documents supporting Plaintiff's removal from his job, and failure to follow DOCCS policies and procedures when removing Plaintiff from his job—fails because (a) inmates do not have any constitutional right to a particular prison job, (b) temporal proximity alone is insufficient to establish an inference of retaliation, (c) Plaintiff's conclusory allegation (that Defendant Holdridge acted out of sympathy towards C.O. Ayotte for an unknown reason) is insufficient to overcome the heightened burden of establishing a causal connection of retaliation by one officer (Defendant Holdridge) on behalf of another officer (C.O. Ayotte), and (d) Defendant Holdridge's alleged lie (that he reviewed security documents that do not exist) and failure to follow DOCCS

policy for removal of an inmate from his job, are not constitutional violations and thus do not give rise to liability pursuant to 42 U.S.C. § 1983.  (*Id*. at 11-13.)  Defendants argue that Plaintiff's claim against Defendants Bell and Mallozzi—which is premised on their denial of his grievance appeal, failure to properly investigate his claims, and assertion that Defendant Bell was "deceptive and misleading" about DOCCS policy—fails because (a) Plaintiff's conclusory allegation that Defendants Bell and Mallozzi retaliated against him for filing a grievance against C.O. Ayotte is insufficient to overcome the heightened burden of establishing a causal connection of retaliation by one officer (Defendant Bell or Defendant Mallozzi) on behalf of another officer (C.O. Ayotte), (b) prisoners do not have a due process right to a thorough investigation of grievances and thus, Defendants Bell and Mallozzi's alleged incomplete investigations are not adverse actions, (c) there is no temporal proximity between the filing of Plaintiff's grievance against C.O. Ayotte on October 12, 2017, and the affirmations of Plaintiff's grievance appeals by Defendants Bell and Malozzi on January 18, 2018, and May 8, 2019, respectively.  (*Id*. at 14-15.)

Second, Defendants argue that based on the Second Circuit decision set forth in *Tangretti*, Plaintiff must allege facts plausibly suggesting that Defendants Holdridge, Bell, and Mallozzi violated his First Amendment rights with their own individual actions.  (*Id*. at 15-17.)  Defendants argue that the Amended Complaint fails to allege that Defendants Holdridge, Bell, and Mallozzi were (a) aware of Plaintiff's protected speech (i.e., the grievance he filed against C.O. Ayotte), (b) knew the extent of the investigation into the first grievance filed by Plaintiff, or (c) acted with retaliatory animus towards Plaintiff because of the grievance filed against C.O. Ayotte.  (*Id*.)  Further, Defendants argue that Plaintiff's allegations regarding Defendants Bell

and Mallozzi—that they were involved in the affirmation of Plaintiff's grievance denial—are insufficient to allege personal involvement. (*Id.*)

### 2. Plaintiff's Opposition

Generally, in opposition to Defendants' motion, Plaintiff argues that (1) the Amended Complaint alleges facts plausibly suggesting a claim of retaliation; and (2) the Amended Complaint plausibly alleges the personal involvement of Defendants Holdridge, Bell, and Mallozzi. (Dkt. No. 22.)

First, Plaintiff argues that he plausibly alleged a claim of retaliation against (1) Defendant DeLutis because (a) he alleged that Defendant DeLutis e-mailed Ms. Hicks telling her to remove Plaintiff from the tailor shop for no reason other than to punish Plaintiff for filing a grievance, which was an adverse action, and (b) there is a causal connection between Plaintiff's grievance and his removal from the tailor shop which can be inferred from (i) the temporal proximity of the two incidents, (ii) Defendant DeLutis's removal of Plaintiff from the tailor shop before conducting an investigation into Plaintiff's grievance, and (iii) the fact that DOCCS' policies and procedures regarding removal of inmates from a program were not followed when removing Plaintiff from the tailor shop, (2) he alleged that Defendant Holdridge became personally involved in the constitutional violation (a) when he lied about reviewing confidential documents that did not exist, and (b) with his support of Defendant DeLutis's decision to remove Plaintiff from the tailor shop, which "showed gross negligence and demonstrated deliberate indifference," (3) he alleged that Defendants Bell and Mallozzi became personally involved in the constitutional violation when they chose "not to do what was right" and "remedy the wrong and in doing so[,] showed gross negligence and demonstrated deliberate indifference to [Plaintiff's] constitutional rights." (Dkt. No. 22 at 4-7.)

Second, Plaintiff argues that (1) as supervisors, Defendants Bell and Mallozzi were personally involved because they learned of the constitutional violation through Plaintiff's grievance appeal and failed to rectify the situation, and (2) Defendant Holdridge was personally involved because Plaintiff sent him a letter requesting information about Plaintiff's removal from the tailor shop and Defendant Holdridge stated that he reviewed confidential documentation supporting Plaintiff's removal and that he supported Plaintiff's removal. (*Id.*)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

---

[1] *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

### III.    ANALYSIS

#### A.    Whether Plaintiff Sufficiently Alleged a First Amendment Retaliation Claim Against Defendant DeLutis

After carefully considering the matter, I answer this question in the affirmative for the reasons set forth below.

A cognizable claim of retaliation pursuant to 42 U.S.C. § 1983 lies when prison officials take an adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse

action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a *prima facie* claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

For purposes of this motion, it is undisputed that Plaintiff engaged in constitutionally protected speech by the filing of a grievance. (Dkt. No. 17, Attach. 1 at 8); *see Davis v. Goord*, 320 F.3d at 352-53 ("[T]he filing of prison grievances is a constitutionally protected activity."); *Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (holding that the filing of a grievance is protected speech).

I reject Defendants' argument that the Amended Complaint fails to allege facts plausibly suggesting that they took an adverse action against Plaintiff. Although courts in the Second Circuit have held that "inmates in the DOC[C]S system do not have any constitutional, statutory, regulatory, or precedential right to a particular prison job," *Muhammad v. Warithu-Deen Umar*, 98 F. Supp. 2d 337, 345 (W.D.N.Y. 2000) (citing *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)), courts have also held that terminating a prisoner's employment is an "adverse action" for

purposes of a First Amendment retaliation claim. *Casey v. Pallito*, 12-CV-0284, 2016 WL 96157, at \*7 (D. Vt. Jan. 7, 2016); *see Logan v. Graham*, 18-CV-0291, 2019 WL 8015209, at \*13, n.19 (N.D.N.Y. Nov. 26, 2019) (Lovric, M.J.) (finding that the firing of the plaintiff from his job as a feed-up porter constituted an adverse action for purposes of a First Amendment retaliation claim); *Henderson v. Vanderwerff*, 13-CV-1537, 2016 WL 660921, at \*4 (N.D.N.Y. Feb. 18, 2016) (D'Agostino, J.) (holding that the "[p]laintiff's complaint plausibly alleges that Officer Chuttey was involved in the adverse action of terminating [the p]laintiff from his prison job in retaliation for his filing of the grievance against Officer Richardson."); *Chavis v. Struebel*, 317 F. Supp. 2d 232, 238 (W.D.N.Y. 2004) (noting that "assigning the inmate [to] less desirable work assignments satisfies the adverse action requirement" for purposes of a prisoner's First Amendment retaliation claim); *Van Pelt v. Finn*, 92-CV-2977, 1993 WL 465297, at \*4 (S.D.N.Y. Nov. 12, 1993) (holding that reassignment of an inmate to a less desirable job with lower pay constitutes an adverse action).

In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action." *Roseboro v. Gillespie*, 719 F. Supp. 2d 353, 366 (S.D.N.Y. 2011). The Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," but, at the summary judgment stage, has also "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017); *see Ziemba v. Thomas*, 390 F. Supp. 2d 136, 157 (D.

Conn. 2005) ("Temporal proximity alone is not sufficient for the plaintiff's claim to survive summary judgment.").

I also reject Defendants' argument that the Amended Complaint fails to allege facts plausibly suggesting a causal connection between Plaintiff's protected speech on October 12, 2017 (Dkt. No. 8 at ¶ 11), and Defendant DeLutis's alleged e-mail to Ms. Hicks on October 26, 2017, telling her to remove Plaintiff from his position in the tailor shop (Dkt. No. 8 at ¶ 27).

First, the Second Circuit has made clear that "temporal proximity of an allegedly retaliatory [action] to a grievance may serve as circumstantial evidence of retaliation." *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (holding that, within the context of an employment discrimination claim, "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."). Although there is significant case law to support the contention that temporal proximity alone is insufficient to survive a motion for summary judgment, *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017), the same is not true at the motion to dismiss stage. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (collecting cases) ("To be sure, a 'plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.' Such circumstantial evidence of retaliation, however, without more, is insufficient to survive summary judgment."). Defendants cite to *Thomas v. Waugh*, 13-CV-0321, 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015) (D'Agostino, J. adopting Report-Recommendation on *de novo* review) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)), which held that "temporal proximity alone is insufficient to establish an inference of retaliation." However, the Second Circuit case

relied on by the Court in *Thomas*, did not draw such a conclusion. *Slattery*, 248 F.3d at 95. Instead, the Second Circuit in *Slattery*, held that, in the context of an employment case, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95. Here, unlike the facts presented in *Slattery*, the Amended Complaint does not allege facts plausibly suggesting that gradual adverse job actions began before Plaintiff was removed from his position in the tailor shop. (*See generally* Dkt. No. 8.) As a result, I find that temporal proximity alone is sufficient to infer a causal connection at the motion to dismiss stage.

Second, the Amended Complaint alleges more than mere temporal proximity from which, a causal connection could be inferred. As set forth by Plaintiff in his memorandum of law, a causal connection could also be inferred based on Defendants' alleged failure to follow "DOCCS's policies and procedures regarding requests for removal and removal of inmates from program." (Dkt. No. 22 at 4; *accord* Dkt. No. 8 at ¶ 34.) While Defendants' alleged failure to follow DOCCS' policies and procedures does not "explicitly state an intent to retaliate, [it] is consistent with and impl[ies] a retaliatory motive." *Burton v. Lynch*, 664 F. Supp. 2d 349, 368 (S.D.N.Y. 2009).

Third, although Plaintiff alleges that Defendant DeLutis took an adverse action against him on behalf of C.O. Ayotte and "it is difficult to establish one defendant's retaliation for complaints against another defendant," *Hare v. Hayden*, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011), I find that the Amended Complaint alleges facts plausibly suggesting a causal connection. More specifically, Plaintiff alleges that Defendant DeLutis was "in charge of the investigation" regarding the grievance that Plaintiff filed against C.O. Ayotte. (Dkt. No. 8

13

at ¶ 26.) In addition, the Amended Complaint alleges that (1) Plaintiff filed the grievance on October 20, 2017,[2] (2) on October 26, 2017, Defendant DeLutis sent an e-mail to Ms. Hicks directing her to remove Plaintiff from the tailor shop for "security reasons," and (3) on October 27, 2017, Defendant DeLutis directed Sergeant Stuart to interview Plaintiff and C.O. Ayotte about Plaintiff's grievance. (Dkt. No. 8 at ¶¶ 26-27.) Thus, the Amended Complaint alleges that Defendant DeLutis was aware of Plaintiff's protected speech (the grievance against C.O. Ayotte) at the time he took the adverse action against Plaintiff (directing his removal from the tailor shop) and that those events occurred in close temporal proximity to each other. *See Young v. Shipman*, 18-CV-0782, 2020 WL 1329159, at *4-5 (N.D.N.Y. Mar. 23, 2020) (Sannes, J.) (finding that the plaintiff alleged facts plausibly suggesting a causal connection between the plaintiff's protected speech (a grievance that the plaintiff filed against Defendant Sawyer) and the adverse action (taken by Defendant Shipman) where Defendant Shipman was allegedly aware of the plaintiff's grievance against Defendant Sawyer and the events occurred in close temporal proximity).

As a result, I recommend that Defendants' motion to dismiss the Amended Complaint, arguing that Plaintiff's retaliation claim fails as a matter of law against Defendant DeLutis, be denied.[3]

---

[2] Plaintiff also alleges that this grievance was filed on October 12, 2017. (*Compare* Dkt. No. 8 at ¶ 11, *with* Dkt. No. 8 at ¶ 26.) For purposes of this motion, the Court need not resolve whether Plaintiff's grievance was filed on October 12, 2017, or October 20, 2017.

[3] To the extent that Defendants claim that they would have taken the same action against Plaintiff absent the protected conduct, at this stage of the litigation, the Court is unable, on a motion to dismiss, to resolve such factual disputes. *See Carl v. Dirie,* 09-CV-0724, 2010 WL 3338566, at *6 (N.D.N.Y. March 29, 2010) (Treece, M.J.) (denying the defendant's motion to dismiss retaliation claim due to factual issues surrounding whether the defendants would have taken the same actions in the absence of retaliatory motives).

### B. Whether Plaintiff Alleged Facts Plausibly Suggesting a Retaliation Claim Against Defendants Holdridge, Bell, and Mallozzi

For the reasons stated in Defendants' memorandum of law, I recommend that Plaintiff's retaliation claim against Defendants Holdridge, Bell, and Mallozzi be dismissed for failure to state a claim upon which relief may be granted. The following is intended to supplement, but not supplant those reasons.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy,

without more, was insufficient to establish personal involvement). Before deciding *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel could be considered "personally involved" if

    (1)    the defendant participated directly in the alleged constitutional violation;
    (2)    the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
    (3)    the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
    (4)    the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
    (5)    the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright*, 21 F.3d at 501 (additional citation omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'" *Tangreti*, 983 F.3d at 618. The Second Circuit explained that, "'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id*. (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

"In light of *Tangreti,* [a] plaintiff cannot establish [a supervisor's] personal involvement based upon the denial of grievance and/or appeals because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment . . . claim." *Bryant v. Miller*, 18-CV-0494, 2021 WL 5095284, at *20 (N.D.N.Y. July 22, 2021) (Hummel, M.J.), *report and recommendation adopted by* 2021 WL 4272396 (N.D.N.Y. Sept. 21, 2021) (Suddaby, C.J.); *see Fabrizio*, 2021 WL 2211206, at *10 (holding that the plaintiff's "attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."); *Zielinski v. Annucci*, 17-CV-1087, 2019 WL 2479616, at *12 (N.D.N.Y. Jan. 8, 2019) (Hummel, M.J.), *report and recommendation adopted by* 2019 WL 1305826 (N.D.N.Y. Mar. 22, 2019) ("[I]t is well-established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement."); *Gomez v. Sepiol*, 11-CV-1017SR, 2014 WL 1575872, at *10 (W.D.N.Y. Apr. 11, 2014) ("[T]he investigation of a grievance alone, is not sufficient to allege personal involvement in the underlying constitutional violation."); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (holding that the plaintiff failed to establish the defendant's personal involvement based on allegations that the defendant investigated the plaintiff's grievance and concluded that there was no evidence that the other defendants had retaliated against the plaintiff).

Plaintiff's allegations against Defendants Holdridge, Bell, and Mallozzi, relate solely to their (a) denial of Plaintiff's grievance, (b) affirmation of Plaintiff's grievance denial, and/or (c) affirmation of Defendant DeLutis's removal of Plaintiff from the tailor shop. (*See generally* Dkt. Nos. 1, 22.) After the Second Circuit's ruling in *Tangreti*, these allegations are insufficient to plausibly suggest the personal involvement of Defendants Holdridge, Bell, and Mallozi. As a

result, I recommend that Defendants' motion to dismiss with respect to Defendants Holdridge, Bell, and Mallozzi, be granted.

**ACCORDINGLY**, it is hereby respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 8) be **DISMISSED** with respect to Defendants Holdridge, Bell, and Mallozzi for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6); and it is further respectfully

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 17) be **GRANTED** to the extent that it sought dismissal of Defendants Holdridge, Bell, and Mallozzi because the Amended Complaint failed to state a claim upon which relief may be granted, and **DENIED** to the extent that it sought dismissal of the Amended Complaint with respect to Defendant DeLutis; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[4]

---

[4] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  January 14, 2022
         Binghamton, New York

_____
Miroslav Lovric
U.S. Magistrate Judge