UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW HENDRICKS,

                            **Plaintiff,**

  vs.                                                  9:20-CV-1035
                                                           (MAD/ML)

SHELLEY M. MALLOZZI, Director of the Inmate
Grievance Program for DOCCS; EARL BELL,
Superintendent, Clinton Correctional Facility;
D. HOLDRIDGE, Deputy Superintendent for
Security, Clinton Correctional Facility; and
C. DELUTIS, Captain of Security, Clinton
Correctional Facility,

                            **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ANDREW HENDRICKS<br>07-B-0269<br>Eastern New York Correctional Facility<br>Box 338<br>Napanoch, New York 12458<br>Plaintiff, *Pro Se* | |
| NEW YORK STATE ATTORNEY<br>GENERAL<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | BRENDA BADDAM, AAG |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this civil rights action on September 3, 2020, alleging violations of his constitutional rights while he was incarcerated at Clinton Correctional Facility. *See* Dkt. No. 1. On October 29, 2020, this Court dismissed the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). *See* Dkt. No. 5. Plaintiff filed a proposed amended

complaint on November 18, 2020. *See* Dkt. No. 8. In his amended complaint, Plaintiff asserted that Defendants C. DeLutis, K. Hicks, D. Holdridge, Earl Bell, and Shelley M. Mallozzi violated his First and Fourteenth Amendment rights when they removed him from his prison job in retaliation for filing a grievance against a correctional officer. *See id.* at ¶¶ 24-57. On December 23, 2020, this Court accepted the amended complaint for filing only to the extent that it asserted First Amendment retaliation claims against Defendants DeLutis, Holdridge, Bell, and Mallozzi, and dismissed the remaining claims without prejudice. *See* Dkt. No. 9.

On March 1, 2021, in lieu of an answer, Defendants filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 17. On January 14, 2022, Magistrate Judge Lovric issued a Report and Recommendation recommending that Defendants' motion to dismiss be granted with respect to Defendants Holdridge, Bell, and Mallozzi, and denied with respect to Defendant DeLutis. *See* Dkt. No. 28. On January 31, 2021, Plaintiff objected to the Report and Recommendation to the extent it recommended granting Defendants' motion to dismiss with respect to Defendants Holdridge, Bell, and Mallozzi. *See* Dkt. No. 29. Currently before the Court is Magistrate Judge Lovric's Report and Recommendation and Plaintiff's objection thereto.

## II. BACKGROUND

The amended complaint alleges that, on October 11, 2017, Plaintiff was given an "Inmate Counseling Notification" by a nonparty civilian employee of the tailor shop where Plaintiff worked. *See* Dkt. No. 8 at ¶ 10. Two days later, Plaintiff submitted a grievance to the Inmate Grievance Resolution Committee ("IGRC") alleging that nonparty Corrections Officer ("C.O.") Ayotte was harassing him in connection with the Inmate Counseling Notification. *See id.* at ¶ 11. Defendant DeLutis "was in charge of the investigation[ and] directed [a nonparty C.O.] to

2

interview [Plaintiff] and C.O. Ayotte about the incident, which he did, separately, on 10/27/17." *Id.* at ¶ 26. On November 1, 2017, at the request of Defendant DeLutis, Plaintiff was removed from his position at the tailor shop for confidential "security reasons." *Id.* at ¶ 29.

On December 11, 2017, Plaintiff filed a second grievance complaining that his removal from his tailor shop job was done in retaliation for the prior grievance he had filed against C.O. Ayotte. *See id.* at ¶ 30. The IGRC denied the second grievance, stating that Plaintiff was removed from the tailor shop for legitimate security concerns. *See id.* at ¶ 47. The IGRC told Plaintiff he was not allowed to know what those security reasons were because "it might jeopardize the safety and security of the facility." *Id.*

Plaintiff appealed the IGRC's decision to the Superintendent, Defendant Bell, on December 27, 2017. *Id.* Defendant Bell ultimately denied the appeal and found Plaintiff's retaliation claim to be "unsubstantiated" because Plaintiff was removed from the tailor shop for legitimate security concerns. *Id.* at ¶ 48. In rendering this decision, Defendant Bell allegedly quoted the "Policy, Procedures and Standards for Programing Inmates manual" and stated that "[a] change in program can be made at anytime, 'in person or in writing ... .'" *Id.* at ¶ 49. The amended complaint claims that this quote was "nothing less than a shameless and unattractive attempt to be deceptive and misleading" because the manual "clearly does not say 'in person or in writing' in that particular section." *Id.*

Plaintiff appealed Defendant Bell's determination to the DOCCS Central Office Review Committee ("CORC"), where Defendant Mallozzi was serving as Director. *Id.* CORC upheld Defendant Bell's determination, finding that Plaintiff was removed from his position at the tailor shop for security reasons. *See id.* at ¶ 53.

Meanwhile, on November 27, 2017, Plaintiff sent a letter to Defendant Holdridge

requesting information about his removal from the tailor shop. *See id.* at ¶ 43. Defendant Holdridge replied the same day, "stating that he had reviewed the 'confidential documentation supporting [Plaintiff's] removal' and that he ... also support[ed] the removal" because it was "in the best interest of the facility." *Id.* The complaint asserts that Defendant Holdridge's statement that he reviewed confidential documentation is a "deliberate and deceptive untruth" because Plaintiff "F.O.I.L. requested <u>any and all</u> documents" related to his removal and the only thing he received was a copy of an email from Defendant DeLutis requesting the removal. *Id.* at ¶¶ 44-45.

On March 1, 2021, Defendants DeLutis, Holdridge, Bell, and Mallozzi filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 17. On January 14, 2022, Magistrate Judge Lovric issued a Report and Recommendation recommending, as relevant here, that the motion to dismiss be granted as to Defendants Holdridge, Bell, and Mallozzi. *See* Dkt. No. 28. Magistrate Judge Lovric found that—after the Second Circuit's recent ruling in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)—a "'plaintiff cannot establish [a supervisor's] personal involvement based upon the denial of grievance and/or appeals because it does not plausibly suggest "[t]he factors necessary to establish" a First Amendment ... claim.'" Dkt. No. 28 at 17 (quotation omitted). Noting that "Plaintiff's allegations against Defendants Holdridge, Bell, and Mallozzi, relate[d] solely to their (a) denial of Plaintiff's grievance, (b) affirmation of Plaintiff's grievance denial, and/or (c) affirmation of Defendant DeLutis's removal of Plaintiff from the tailor shop," Magistrate Judge Lovric concluded that Plaintiff's "allegations are insufficient to plausibly suggest the personal involvement of Defendants Holdridge, Bell, and Mallozi." *Id.*

Plaintiff's raises two objections to Magistrate Judge Lovric's Report and Recommendation. First, Plaintiff argues that the amended complaint alleged facts beyond the denial or affirmation

of the denial of a grievance that plausibly support the personal involvement of Defendants Holdridge, Bell, and Mallozzi in Plaintiff's retaliation claim. *See* Dkt. No. 29 at ¶¶ 1-4. Second, Plaintiff argues that it was unfair for Magistrate Judge Lovric to rely on *Tangreti* in rejecting his retaliation claims because *Tangreti* was decided after Plaintiff filed his amended complaint. *See id.* at ¶¶ 5-7. Plaintiff also asks for permission to file a second amended complaint should the Court choose to adopt the Report and Recommendation. *See id.* at ¶ 7.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.     Plaintiff's Objections**

Plaintiff's first objection is that his amended complaint has alleged facts that plausibly suggest the personal involvement of Defendants Holdridge, Bell, and Mallozzi in the events that form the basis of his retaliation claim. *See* Dkt. No. 29 at ¶ 1. Specifically, Plaintiff asserts that the amended complaint states that Defendant Holdridge "took it upon himself to get personally involved" by responding to a letter written by Plaintiff and "stating that he [had] reviewed the confidential documentation supporting [Plaintiff's] removal from the Tailor Shop ... knowing full well that no such documentation even existed." *Id.* at ¶ 2 (citing Dkt. No. 8 at ¶¶ 42-45). Plaintiff also asserts that Defendant Bell did more than "merely deny [his] grievance on appeal"; claiming that he "reconfigur[ed] and manipulat[ed] the wording of DOCCS policy," showing "blatant disregard for and deliberate indifference to [Plaintiff's] First Amendment rights." *Id.* at ¶ 4 (citing Dkt. No. 8 at ¶¶ 46-51). Finally, Plaintiff argues that the amended complaint states that Defendant Mallozzi "just rubber stamped [D]efendant Bell's decision," making him "just as liable as [D]efendant Bell." *Id.*

The Court finds that Defendants' motion to dismiss should be granted with respect to Defendants Holdridge, Bell, and Mallozzi. As Magistrate Judge Lovric found, "[i]t is well settled that affirming the outcome of a disciplinary hearing does not in itself constitute personal involvement in any potential due process violation," or other alleged underlying unconstitutional conduct. *Abdul-Halim v. Bruyere*, No. 9:19-CV-740, 2021 WL 3783087, *3 (N.D.N.Y. Aug. 26, 2021); *see also Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, *5 (S.D.N.Y. Jan. 26, 2021) ("Failing to correct another officer's violation does not suffice"); *Gomez v. Sepiol*, No.

7

11-CV-1017, 2014 WL 1575872, *10 (W.D.N.Y. Apr. 11, 2014) ("[T]he investigation of a grievance alone, is not sufficient to allege personal involvement in the underlying constitutional violation"); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (holding that the plaintiff failed to establish the defendant's personal involvement based on allegations that the defendant investigated the plaintiff's grievance and concluded that there was no evidence that the other defendants had retaliated against the plaintiff). Contrary to Plaintiff's argument, Defendant Holdridge's reliance on confidential documentation and Defendant Bell's alleged error when quoting DOCCS policy do not transform their review of his second grievance into personal involvement in the underlying constitutional violation (the allegedly retaliatory removal of Plaintiff from his job); nor do these alleged actions amount to separate constitutional violations.

Plaintiff next objects to the application of the Second Circuit's holding in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020),[1] to this case. *See* Dkt. No. 29 at ¶¶ 5-7. Specifically, Plaintiff notes that the amended complaint was filed before the decision in *Tangreti* was issued, and argues that it would be "unfair" for the Court to apply *Tangreti* where he "obviously had no knowledge that the [prior] test would soon be invalidated" at the time he wrote the amended complaint. *Id.* at ¶ 7. The Court finds that *Tangreti* is properly applied to this case. "[T]he general rule [is] that a court must apply the law as it exists at the time it renders its decision." *Walsche v. First Inv'rs Corp.*, 981 F.2d 649, 653 (2d Cir. 1992) (citations omitted); *see also Kremer v. Chem. Const. Corp.*, 623 F.2d 786, 788-89 (2d Cir. 1980), *aff'd*, 456 U.S. 461 (1982) ("The general rule of long standing is that judicial precedents normally have retroactive as well as

---

[1] In *Tangreti*, the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards for establishing supervisory liability. Ultimately, the Second Circuit held that, to establish a constitutional violation against a supervisor, a plaintiff "must plead and prove that [the supervisor-]defendant, through [his or her] own individual actions, has violated the constitution." *Tangreti*, 983 F.3d at 618 (internal quotation marks omitted).

8

prospective effect"). The narrow exception to this general principle identified in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), does not apply here.[2]

Accordingly, the Court adopts Magistrate Judge Lovric's Report and Recommendation in its entirety.

**C.     Leave to Amend**

Finally, Plaintiff requests leave to file a second amended complaint should the Court choose to adopt Magistrate Judge Lovric's Report and Recommendation. *See* Dkt. No. 29 at ¶ 7. In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). However, an opportunity to amend is not required where the plaintiff has previously been afforded such an opportunity. *See Coleman v. brokersXpress, LLC*, 375 Fed. Appx. 136, 137 (2d Cir. 2010); *see also Bivona v. McLean*, No. 9:19-CV-0303, 2019 WL 2250553, *5 (N.D.N.Y. May 24, 2019); *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, *8 (N.D.N.Y. Jan. 13, 2008), *aff'd*, 357 Fed. Appx. 388 (2d Cir. 2009).

Here, Plaintiff has already been afforded one opportunity to amend the complaint and has not made any specific showing as to how he would cure the defects that have persisted if given a second opportunity to amend. Accordingly, Plaintiff's request for leave to file a second amended

---

[2] "To qualify for purely prospective application, a decision 'must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed'" and "the court must then 'weigh' the issue of whether retroactive application would conflict with or further the purposes of the new rule and whether it would produce inequitable results." *Walsche*, 981 F.2d at 653 (quoting *Chevron Oil Co.*, 404 U.S. at 106-07).

complaint is denied.

## IV. CONCLUSION

After carefully reviewing the Report and Recommendation, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Report and Recommendation (Dkt. No. 28) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 17) is **GRANTED in part** and **DENIED in part**;[3] and the Court further

**ORDERS** that Defendants Holdridge, Bell, and Mallozzi are terminated as Defendants in this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 23, 2022
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[3] Plaintiff's First Amendment retaliation claim remains against Defendant DeLutis.

10